UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JIMMIE LEE DENNISON,     Plaintiff,

v.     Civil Action No. 3:14-cv-P378-DJH

HARDIN COUNTY DETENTION CENTER *et al.*,     Defendants.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on several cross-motions for summary judgment. These motions include a motion for summary judgment by Defendants Christy Aubrey, RN, Christi Curry, LPN, Heather Kennedy, LPN, and Southern Health Partners, Inc. (DN 40); Plaintiff's "Dispositive Motion and Request to Add Defendant" (DN 41); Defendant Hardin County's motion for summary judgment (DN 42); Plaintiff's motion to deny Defendant's motion for summary judgment and request for summary judgment for Plaintiff (DN 48); Plaintiff's "Reply and Request for Summary Judgment Against Defendant" (DN 50); and Plaintiff's motion for summary judgment and response to Defendants' motion to deny Plaintiff's Motion (DN 51). For the following reasons, the Court will deny each of Plaintiff's motions for summary judgment and grant Defendants' motions for summary judgment.

### I. PROCEDURAL HISTORY

Plaintiff Jimmie Lee Dennison, who was incarcerated at Hardin County (Kentucky) Detention Center (HCDC) for approximately nine months, filed this *pro se* 28 U.S.C. § 1983 action, making a variety of claims against different Defendants. Because Plaintiff is proceeding *in forma pauperis*, the Court screened his complaint pursuant to 28 U.S.C. § 1915A and allowed his claims of deliberate indifference to a serious medical need, and medical malpractice to proceed against Defendants Hardin County, Southern Health Partners, Inc. (SHP), and nurses

Christy Aubrey, Christi Curry, and Heather Kennedy. (DN 12) It is undisputed that SHP was HCDC's contract healthcare provider and the three Defendant nurses were SHP employees during the relevant time period.

In his amended complaint (DN 22), Plaintiff alleged that, prior to being incarcerated at HCDC, he had been "diagnosed as fully disabled . . . with Type 1 Bi-Polar, Paranoid Schiztophrenic, P.T.S.D., and Agoraphobia" and had been prescribed "Depakote, Respridal, and Seroquil" by a private physician. (DN 22, Am. Compl., p. 4). He also alleged that, prior to his incarceration, he been diagnosed with advanced arthritis and bursitis in both shoulders and had been prescribed Lortab, Tramadol, a muscle relaxer, and Ibuprofen to treat the pain caused by these conditions. *Id.* Plaintiff further reported that he was injured in a fall at HCDC, shortly after being incarcerated there, and was x-rayed and diagnosed with a "torn rotator cuff and tendons" and that, as a result of such, Defendants only provided him with Ibuprofen for ten days. *Id.* Plaintiff also alleged that as result of this fall, "it was a constant day and night struggle with the blinding, crippling pain, to the point my blood pressure was running 200/100." *Id.* Plaintiff further alleged that despite repeated requests, Defendants refused to provide him with his prescription medications for his mental health diagnoses. Ultimately, Plaintiff alleged that this inadequate medical treatment resulted in him having a "light stroke." *Id.* For relief, he requested $150 million in money damages, $500 million in punitive damages, and another $500 million for "almost causing [his] painful death." *Id.*

## II. FACTS

The evidence shows that Plaintiff was housed at HCDC from December 10, 2013, through August 20, 2014. Upon booking at HCDC, on December 10, 2013, Plaintiff answered medical questions and indicated that he was currently taking "Tramadol, Loratab, Ibuprofen, and

Bacorat[1]" and that he suffered from "losing feeling in right side of leg and pain in shoulder area." (DN 40, SHP Defs.' Br., Ex. 6, Medical Questions). On that same date, Plaintiff was again asked questions regarding his medical history for the Medical Staff Receiving Screening Form. (DN 40, SHP Defs.' Br., Ex. 7). On that form, Plaintiff indicated that the only condition he had been treated for was high blood pressure and that he was not currently taking any medications prescribed to him by a physician. *Id.* According to the form, he did not express to the interviewer that he had any mental health issues or that he was taking medications for such. *Id.* Plaintiff's vital signs at the screening did indicate, however, that he had high blood pressure. *Id.* At Plaintiff's request, Defendants contacted Plaintiff's pharmacy in Alabama and asked for a current list of Plaintiff's medications. HCDC medical staff received the pharmacy log on December 19, 2013. The medications listed on the log were Ibuprofen, Hydrocodone, Baclofen, Tramadol, Prednisone, and Rhinoflex. (DN 40, SHP Defs.' Br., Ex. 8, Pharmacy Log). The log indicated that there were no refills authorized for any medication except Ibuprofen. *Id.*

In support of Plaintiff's allegations, Plaintiff attached several documents to his amended complaint that the Court will consider as evidence in analyzing the cross-motions for summary judgment. These documents included two clinical progress notes from a medical provider (one from 2005 and one from 2006); a 2013 letter from a Dr. Keith Morrow stating that Plaintiff's pet provided him emotional support; seven sick call slips from Plaintiff's time at HCDC; two sick call slips from his time at another facility; and a list of Plaintiff's "current medications" from the Kentucky Department of Corrections (KDOC) which appears to have been printed on September 22, 2014. *Id.*

---

[1] In their brief, the SHP Defendants state that they believe Plaintiff meant "Bacoflen" instead of "Bacorat." They state that Baclofen is a muscle relaxer and was also listed on Plaintiff's pharmacy's log. (DN 40, SHP Defs.' Br., p. 3, n.10; Ex. 8, Pharmacy Log).

3

The referenced 2005 and 2006 clinical progress notes from the Suncoast Center for Community Mental Health, Inc., indicate that Plaintiff had been prescribed Risperdal, Zoloft, Depakote, and Seroquel for mental health issues in those years. These documents do not indicate that Defendants ever received a copy of them or that Plaintiff was still taking these medications when he was first incarcerated at HCDC in December 2013. (DN 22, pp. 13-14).

Plaintiff's sick call slips from his time at HCDC establish that he frequently reported physical concerns and made requests for pain medications and was repeatedly told he could not be given medication for chronic pain. For example, Plaintiff's sick call slips from March 30, 2014, and March 31, 2014, indicate that he sought to be transferred because "the pains are getting out of hand" and that he requested an arm sling for the "right arm [he] injured" and another "regiment of 600 mg Ibuprophen for a while or until a place is found to move me too." (DN 22, pp. 20-21). On these forms, Plaintiff indicates that he had been in pain since he "fell in the kitchen" at HCDC on December 3, 2013. (DN 22, p. 21-22). In response to these complaints, a nurse states, "You are not being moved anywhere else. I cannot approve the above requests, as this is a chronic issue." *Id.* Plaintiff's sick call slip from April 1, 2014, shows that he again requested Ibuprofen, an arm sling, and relocation and that a nurse responded by stating, "No treatment for chronic pain, or arm sling. You are not being relocated." (DN 22, p. 23). Similarly, Plaintiff's sick call slip from April 2, 2014, also shows a nurse informed him that "we do not treat chronic pain." (DN 22, p. 24). Finally, Plaintiff's last sick call slip at HCDC, dated August 17, 2014, states, "My shoulder has flaired up, would like some ibuprophen, the medical papers you asked for was mailed out Saturday, I'll get them next week." (DN 22, p. 25). A nurse responded to this request by stating: "You have been treated numerous times for shoulder

4

pain. As you have been advised several times before, we do not medicate for chronic pain. Ibuprofen and Tylenol are available on canteen." *Id.*

The other sick call slips submitted by Plaintiff at HCDC show concerns regarding his blood pressure. For example, Plaintiff's January 6, 2014, sick call slip shows that he reported losing feeling in his legs and feet on January 6, 2014, but was advised by a nurse that this could be due to his refusal to take his blood pressure medicine. (DN 22, p. 19). In addition, Plaintiff's sick call slip from August 13, 2014, shows that he reported having sharp chest and arm pains and that a nurse responded by telling him that his "blood pressure is doing much better. Please try to remain on these, as well as the diuretic the doctor has added. Hopefully it will subside." (DN 22, p.20).

Finally, the form Plaintiff submitted from the KDOC, which appears to have been printed on September 22, 2014, indicates that Plaintiff began being prescribed Guaifenesin for acute bronchitis, Ibuprofen and Methocarbamol for pain, and Risperdone, Depakote, and Sertraline, once he was transferred from HCDC to Roederer Correctional Complex in late August 2014. (DN 22, p. 12). On this form, Plaintiff states that he still seeks to be prescribed Lortab, Tramadol, and a muscle relaxer for pain. *Id.*

## II. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

5

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment . *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. ARGUMENTS

#### A. Plaintiff's Motions for Summary Judgment

Plaintiff has seemingly filed four motions for summary judgment (DNs 41[2], 48, 50, and 51). The Court will consider the arguments that Plaintiff has raised in each motion. In his first

---

[2] Docket Entry No. 41 is actually entitled "Dispositive Motion and Request to Add Defendant." In this motion, Plaintiff also requests that the Court allow him to "re-add the Hardin County Detention Center" as a defendant. The Court, however, points Plaintiff to its Memorandum Opinion and Order entered on November 6, 2014 (DN 12), which stated as follows:

> Hardin County Detention Center is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 U.S. App. LEXIS 28072, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983); *see also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983). In this situation, Hardin County is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson

motion (DN 41), Plaintiff argues that although Defendants had his medical records, "stating [his] physical and mental medical needs, they . . . repeatedly over 9 months; even after their misdiagnosis of my mental medication and the fall in the kitchen destroying my right shoulder . . . constantly and Continually denied me my M.D. prescribed medications." (DN 41, Pl.'s Br., p. 1). Plaintiff also states that his sick call slips alone prove that Defendants are liable for "misdiagnosis of [his] psych meds and refusal to treat my chronic pain." (*Id.*, p. 2)  In support of his motion, Plaintiff attached the following three opinions to his brief: *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (holding that qualified immunity is defeated "if an official knows or reasonably should know that the action he takes within his sphere of official responsibility will violate the constitutional rights of the plaintiff); *Romero v. Lappin*, No. 10-35-ART, 2011 U.S. Dist. LEXIS 86435 (E.D. Ky. Aug. 4, 2011) (citing *Harlow v. Fitzgerald's* holding that qualified immunity shields government officials from liability for monetary damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known); and *McLaurin v. Morton*, 48 F.3d 944 (6th Cir. 1995) (also citing *Harlow*).

In Plaintiff's second motion for summary judgment (DN 48), he reiterates that he was repeatedly denied the medications he had been prescribed by his doctor, including hydrocodone and "trimodal" for arthritis and bursitis which he has suffered from since the 1990's. He again states that although he was prescribed Ibuprofen for ten days after his fall at HCDC, Defendants

---

County itself). Further, Hardin County is a "person" for purposes of § 1983. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

In addition, the Court notes that it has allowed Plaintiff's claims of deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution and Section 17 of the Kentucky Constitution and his claims of medical malpractice to proceed against Hardin County and that they are the subject of the motions for summary judgment now before the Court (DN 23).

subsequently refused to provide him with medication after that because they "do not treat chronic pain."

In Plaintiff's third motion for summary judgment (DN 50), he reiterates that the sick call slips, their dates, and Defendants' responses to them, which he attached to his amended complaint, are all the proof he needs to show that he is entitled to summary judgment.

Finally, in Plaintiff's final motion for summary judgment (DN 51), he states that there is no such thing as judicial immunity. He also reiterates that he had an accident wherein he tore the rotator cuff in his right shoulder and that he was denied medical treatment as was prescribed by "Dr. Morrow" and that this resulted in him having three strokes.[3]

### B. Defendants Christy Aubrey, RN, Christi Curry, LPN, Heather Kennedy, LPN, and SHP's Motion for Summary Judgment

In Defendants Christy Aubrey, RN, Christi Curry, LPN, Heather Kennedy, LPN, and SHP's (or the "SHP Defendants'") motion for summary judgment (DN 40), the SHP Defendants first argue that the evidence establishes that they were not deliberately indifferent to a serious medical need. They also argue that Defendant SHP cannot be held liable for deliberate indifference under a theory of *respondeat superior*. The SHP Defendants further argue that Plaintiff's medical malpractice claim must fail because Plaintiff has not provided any expert testimony in support of this claim. Finally, the SHP Defendants argue that that they are protected from liability by the doctrine of qualified official immunity.

---

[3] In DN 48, DN 50, and DN 51, Plaintiff also states that he is "recharging" Defendants and Judge Mark Easton with "deliberate unusual punishment, mental and physical abuse and duress, dereliction of duty, violation of my 8th Amendment of the U.S. Constitution, Section 17 of the Kentucky Constitution, violation of my 1st, 2nd, 4th, and 15th civil rights." With regard to these claims, the Court notes that they were included in Plaintiff's amended complaint and that the only claims the Court allowed to proceed were the claims of deliberate indifference in violation of the Eighth Amendment of the United States Constitution and Section 17 of the Kentucky Constitution and medical malpractice (DNs 21 & 22). The Court also notes that Plaintiff's claims against Judge Easton were also dismissed by a prior Court Order (DN 12).

C. **Defendant Hardin County's Motion for Summary Judgment**

In its motion for summary judgment (DN 42), Defendant Hardin County argues that it is entitled to summary judgment because Plaintiff has not identified a Hardin County official, employee, or representative who was responsible for his medical treatment and because Plaintiff has not identified a policy or custom that was the moving force behind his alleged constitutional deprivation. Hardin County also argues that it is entitled to summary judgment on Plaintiff's medical malpractice claim because "counties are cloaked with sovereign immunity."

## IV. ANALYSIS

A. **The SHP Defendants**

a. **Deliberate Indifference to a Serious Medical Need**

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Eighth Amendment protects convicted prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825,

9

834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*[4]

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer*, 511 U.S. at 834). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). In *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th

---

[4] The legal analysis for Plaintiff's claims under the Eighth Amendment and Section 17 of the Kentucky Constitution is the same. *See Simms v. City of Harrodsburg,* 2007 U.S. Dist. LEXIS 70250, *15 (E.D. Ky. Sept. 21, 2007)("[Section 17 of the Kentucky Constitution] is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky Courts.") (citing *Workman v. Commonwealth,* 429 S.W.2d 374, 376 (Ky. 1968)); *Riley v. Commonwealth,* 120 S.W.3d 622, 633 (Ky. 2003) ("We regard [the] variation in phraseology [between the Eighth Amendment and the Section 17 of the Kentucky Constitution] as a distinction without a difference."). As such, the Court's analysis of Plaintiff's Eighth Amendment claims is equally applicable to his claims arising under Section 17 of the Kentucky Constitution.

> Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake*, 537 F.2d at 860 n.5.

### i. Medical Treatment for Chronic Pain

Plaintiff's primary complaint against the SHP Defendants is that they repeatedly refused to treat his chronic pain. Plaintiff first alleges that he had been diagnosed with bursitis and arthritis prior to being incarcerated at HCDC and was prescribed prescription pain medication for these ailments. However, Plaintiff has provided no evidence of any of these diagnoses or evidence that he informed the SHP Defendants that he had these diagnoses. The evidence does show that Plaintiff informed the SHP Defendants upon his arrival at HCDC that he was taking "Tramadol, Loratab, Ibuprofen, and Bacorat." However, the pharmacy log produced by the SHP Defendants indicates that although Plaintiff had been prescribed Ibuprofen, Hydrocodone, Baclofen, Tramadol, Prednisone, and Rhinoflex at some point, the only refill authorized at the time Plainitff entered HCDC was for Ibuprofen.

Plaintiff also alleges that he suffered a torn rotator cuff as a result of a fall of HCDC. While there is no evidence of a diagnosis, the inmate sick call slips submitted by Plaintiff do

indicate that he fell in the kitchen on December 3, 2013, and that he was prescribed a regimen of 600 mg of Ibuprofen by the SHP Defendants as a result.[5]

Thus, Plaintiff's primary evidence that the SHP Defendants were deliberately indifferent to his reports of chronic pain are the five call slips he submitted, ranging from March 30, 2014, to August 17, 2014, which show that he repeatedly reported suffering from pain and that, in response to his request for pain medication and, on occasion, an arm sling and a transfer, he was informed by the SHP Defendants four separate times that they do not treat "chronic pain." And, indeed, on the last sick call slip that Plaintiff provided, in which he again stated that his shoulder was in pain and that he would like medication, he was informed as follows: "You have been treated numerous times for shoulder pain. As you have been advised several times before, we do not medicate for chronic pain. Ibuprofen and Tylenol are available on canteen."

In response, the SHP Defendants argue that Plaintiff's sick call slips show that his requests were for narcotics and that they have a very strict policy against providing narcotics to inmates due to safety and security concerns. Significantly, however, there is no evidence in the record showing that Plaintiff specifically requested narcotics for his pain, and one shows that all he was requesting was "another regiment of 600 mg Ibuprofen."

The SHP Defendants also state that in response to Plaintiff's requests for pain medication, he was given Voltaren – a non-narcotic pain medication. Again, however, there is no evidence in the record to support this claim.

The first determination that the Court must reach in its analysis is whether Plaintiff has shown that the pain he alleges he suffered from constitutes a "serious medical need." As stated

---

[5] In his amended complaint (DN 22), Plaintiff claims that he received an x-ray on the night of his fall and that he was told that he had a torn rotator cuff. Significantly, however, Plaintiff has provided the Court with no evidence that he actually received this diagnosis. And the record contains no medical records, such as the x-ray or other tests, showing that he received this or any other diagnosis.

above, although Plaintiff alleges that he had been diagnosed with bursitis, arthritis, and a torn rotator cuff, he has not presented evidence which establishes such. Indeed, the only evidence of Plaintiff's "injury" are the five sick call slips in which he reports that he is in pain and requests pain medication.

      In *Dearing v. Mahalma*, a district court extensively analyzed and addressed this very issue. No. 1:11-cv-204, 2013 U.S. Dist. LEXIS 188064 (S.D. Ohio Oct. 7, 2013). In that case, the plaintiff complained that he suffered severe and chronic pain from a decades-old gunshot injury; that his pain was so severe it that impacted his regular activities, including his sleep; and that the defendants failed to adequately treat his pain. *Id*. at *2-3. The *Dearing* court began by taking judicial notice of the fact that chronic pain is an extremely common problem, not just in the prison population, but in the U.S. population at large. *Id.* at *19. The court cited an article in an issue of the National Institutes of Health (NIH) publication, Medline*Plus*, which states that although more than 76 million people in the United States live with chronic pain, almost half of them receive no treatment. http://www.nlm.nih.gov/medlineplus/magazine. (Spring 2011, Vol. 6, Number 1, page 4).

      Using this information as a guide, the *Dearing* court concluded that the plaintiff's chronic pain from a gunshot wound years before did not meet the Sixth Circuit's definition of an "objectively serious" medical condition. *Id*. at *20. In so holding, it relied upon the Sixth Circuit's holding in *Blackmore*, in which it defined an "objectively serious" medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." 390 F.3d at 897. The *Dearing* court noted that "the latter 'obvious' category of claim is generally limited to those claims that involve a need 'for immediate or emergency medical attention,' involving 'life-

threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem,' such as the acute appendicitis symptoms at issue in *Blackmore*." *Id*. at *20-21 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994)). Like the court in *Dearing*, this Court concludes that Plaintiff has not presented evidence that his chronic pain meets the "obviousness" standard for determining that he suffered from a serious medical need, especially since his chronic pain was not accompanied by evidence of any acute injury or diagnosis. *See, e.g.*, *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991) (inmate who alleged denial of prescribed treatment for red, swollen and draining surgical wound following gunshot, stated claim for deliberate indifference, because wanton interruption of a prescribed plan of treatment can violate Eighth Amendment).

The Court notes, however, that a plaintiff can also prove a medical need is "objectively serious" by showing the effect of a delay in treatment. *Blackmore*, 390 F.3d at 897. To demonstrate a "serious medical need" under this standard, a plaintiff must demonstrate that a "delay in treatment . . . caused injury, loss, or handicap." *Id*. To succeed under this standard, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of a delay in treatment." *Id.* at 898 (quoting *Napier*, 238 F.3d at 742). With regard to this line of cases, the Court finds that the facts in *Wright v. Taylor* most closely parallel the facts in this case. 79 F. App'x 829 (6th Cir. 2003). In *Wright*, the Sixth Circuit rejected an inmate's Eighth Amendment challenge to a five-week delay in treatment for tooth decay and the prison's failure to provide him with over-the-counter pain medication because the inmate had not shown that the five-week delay had any detrimental effect on his condition. *Id*. at 830-831. Similarly, the Court finds that here Plaintiff has failed to submit medical proof that the SHP Defendants' failure to provide him with pain medication had any detrimental effect on his condition. Indeed, although

Plaintiff claims that the SHP Defendants' denial of pain medication ultimately caused him to have a mild stroke, he has not presented the Court with any evidence upon which a jury could reasonably conclude that he actually suffered a stroke or that the denial of pain medication was its cause.[6]

Based on the above, the Court concludes that Plaintiff has failed to prove that his chronic pain constituted an objectively serious medical need. The Court notes that this holding is supported by a series of cases in addition to the ones outlined above. *See, e.g.*, *Harrell v. Grainger Cty., Tenn.*, 391 F. App'x. 519, 524 (6th Cir. 2010) (exacerbation of prior back injury evaluated under *Napier* standard, affirming summary judgment because failing to dispense medication and "dispensing ibuprofen to Plaintiff two times in six days may have been deficient to adequately alleviate Plaintiff's pain . . . [but] does not rise to the level of exacerbating an objectively obvious injury"); *Lane v. Wexford Health Sources*, No. 2:10-cv-389, 2011 U.S. Dist. LEXIS 53403 (S.D. Ohio, May 18, 2011) (granting summary judgment to defendants on claim that prison medical staff failed to adequately treat exacerbation of chronic pain from gunshot wound, based on inmate's failure to submit medical evidence to establish the detrimental effect of the alleged delay in treatment); *Aladimi v. Jones*, No. 1:08-cv-810, 2010 U.S. Dist LEXIS 71055 (S.D. Ohio June 21, 2010) (no objective component demonstrated based on argument that prison doctors should have prescribed pain medication absent medical evidence of serious medical need). In summary, because Plaintiff has failed to establish that his chronic pain constituted a "sufficiently serious medical condition," the Court holds that the SHP Defendants

---

[6] In one of Plaintiff's sick call slips from the facility to which he was ultimately transferred, he does report that he had a mild stroke. However, the Court finds that this one statement, which may be no more than a self-assessment of what occurred, does not constitute evidence upon which a jury could reasonably find that Plaintiff actually had a stroke or that a lack of pain medication caused him to have a stroke.

are entitled to summary judgment on Plaintiff's claim of deliberate indifference to his chronic pain.[7]

### ii. Medical Treatment for Mental Health Issues

Plaintiff has submitted evidence showing that he had serious mental health issues in 2005 and 2006. He has also submitted evidence showing that a "Dr. Morrow" had indicated that he needed an emotional support animal in 2013. The Sixth Circuit has held that a prisoner's "psychological needs may constitute serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)(quoting *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Here, however, the Court need not determine whether Plaintiff's evidence establishes that he had a serious mental condition at the time he entered HCDC because Plaintiff has failed to produce evidence which establishes the subjective component of deliberate indifference – that the SHP Defendants recklessly disregarded his mental health needs.

The undisputed evidence shows that, on the day of his admission to HCDC, Plaintiff failed to inform the SHP Defendants that he had ever been diagnosed with any mental health condition or that he was taking medication for such, despite twice being asked specific questions regarding his medical history. Plaintiff also has not shown that the SHP Defendants ever received a copy of the 2005 and 2006 progress notes from the Suncoast Center for Community

---

[7]Because Plaintiff failed to establish the first component of an Eighth Amendment violation, the Court need not determine whether the record establishes that the SHP Defendants were deliberately indifferent to Plaintiff's chronic pain. The Court is concerned, however, that the evidence shows that SHP's policy prohibits treatment of chronic pain. The Court could conceive of circumstances under which this would amount to reckless disregard of an inmate's serious medical needs. As the court in *Seal* opined, there may be situations where chronic pain would constitute a serious medical need, e.g., where an inmate's complaints of pain were accompanied by weight loss, vomiting, or other significant impact on daily activities. 2013 U.S. Dist. LEXIS 188064, at *21 n.6.

The Court could find only one case in which a similar policy had even been discussed. In that case, the Nevada Department of Corrections "made a policy determination to no longer treat chronic pain on a routine basis" due to health concerns associated with the prolonged use of Ibuprofen and Naproxen. *Collins v. MacArthur*, No. CV-N-05-0237-PMP, 2006 U.S. Dist. LEXIS 101111 (D.C. Nev. June 14, 2006). Significantly, however, the defendants in *Collins* emphasized that although pain medicine would no longer be routinely prescribed for chronic pain, *inmates would still be evaluated on an individual basis* to determine whether pain medication was appropriate to their specific medical needs. *Id*. at *16-17.

Health, Inc., which outlined his mental health issues at that time, or a copy of the 2013 letter from Dr. Morrow indicating that he believed that a pet would provide Plaintiff with emotional support. Finally, the evidence presented by the SHP Defendants shows that, shortly after Plaintiff was incarcerated at HCDC, they requested and received a medication log from the pharmacy that Plaintiff indicated he was currently using and that this log showed that the only medicine that Plaintiff had a current prescription for was Ibuprofen. In fact, according to the record, Plaintiff only mentioned his mental health prescriptions on one occasion. According to Plaintiff's January 6, 2014, sick call slip, he complained as follows: "Just a reminder that I'm losing more feeling in my legs and feet. If need be in the future, you can call Dr. Morrow to verify my prescriptions for Depakote and Respridal [sic], I haven't taken Seroquil for a while to save my liver." A nurse responded as follows: "Depakote, Risperdal, nor Seroquel are for loss of feeling in your legs. You are refusing to take your BP medicine, this may have something to do with what you are experiencing." Thus, other than the January 6, 2014, sick call slip, Plaintiff has produced no evidence that the SHP Defendants were aware that he had ever been prescribed medications for mental health diagnoses. And even this slip does not indicate that Plaintiff actually informed the SHP Defendants of his mental health history or that he was requesting medications to treat current mental health issues. Thus, based on the undisputed evidence, the Court concludes that, as a matter of law, the SHP Defendants were not deliberately indifferent to Plaintiff's mental health needs because the evidence does not show that they acted with "a sufficiently culpable state of mind."

### b. Medical Malpractice

The Court will now consider the SHP Defendants' argument that they are entitled to judgment on Plaintiff's state-law claim of medical malpractice. Under Kentucky law, "[e]xcept

in limited factual circumstances, . . . the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). "Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases." *Id.* (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)). "Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony." *Id.*

> One exception involves a situation in which "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care'; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'" An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*White v. Norton Healthcare, Inc.*, 435 S.W.3d 68, 76-77 (Ky. Ct. App. 2014) (quoting *Andrew v. Begley*, 203 S.W.3d at 170-71) (internal citations omitted); *see also Reynolds v. Elizabeth*, No. 1:11CV-P142-M, 2015 U.S. Dist. LEXIS 132070, at *9-11 (W.D. Ky. Sept. 29, 2015); *Griffin v. Lappin*, No. 10-49-GFVT, 2011 U.S. Dist. LEXIS 29025, at *22-24 (E.D. Ky. March 21, 2011); *Muhammed v. United States*, No. 08-CV-131-KKC, 2009 U.S. Dist. LEXIS 89799 (E.D. Ky. Sept. 28, 2009).

    The Court agrees with the SHP Defendants that they are entitled to summary judgment as a matter of law on Plaintiff's medical malpractice claim because Plaintiff has failed to disclose or produce any competent and qualified expert witness critical of the care Plaintiff received in this case. The Court finds that an expert witness is necessary because the issue of medication choice

is nearly always an issue of medical judgment, and therefore beyond the everyday knowledge of laypersons. The Court finds this to be especially true in light of the information on chronic pain published by the NIH, referenced above, which reads as follows: "Assisting people in managing chronic pain is tough. Strong medicines that relieve the pain can also create new problems and must be used with great care." http://www.nlm.nih.gov/medlineplus/magazine. (Spring 2011, Vol. 6, Number 1, page 4). The article goes on to state that "[t]hose who prescribe these medicines, and those who use them, must learn to do safely and effectively." *Id.*

### B. Defendant Hardin County

Finally, the Court holds that Defendant Hardin County is likewise entitled to summary judgment. As set forth above, with regard to his claims of deliberate indifference to a serious medical need, Plaintiff has failed to establish that his constitutional rights were violated. A municipality can only be held liable under §1983 if a plaintiff can prove that a municipal policy or custom was the "moving force" behind a constitutional violation. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Alkine v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

With regard to Plaintiff's medical malpractice claim, the Court holds that Defendant Hardin County is entitled to summary judgment both because Plaintiff has failed to produce an expert witness and because his claim is barred by the doctrine of sovereign immunity. In Kentucky, a county government, as a subdivision of the state, shares the state's sovereign immunity, *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003), and Kentucky has not waived its immunity against tort suits. *See Sours v. Big Sandy Reg'l Jail Auth.*, 946 F. Supp. 2d 678, 689 (E.D. Ky. 2013).

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants Christy Aubrey, Christi Curry, Heather Kennedy, and SHP's motion for summary judgment (DN 40) is **GRANTED**; Defendant Hardin County's motion for summary judgment (DN 42) is **GRANTED**; and Plaintiff's motions for summary judgment (DNs 41, 48, 50, and 51) are **DENIED** as moot.

Date: February 23, 2016

                                              **David J. Hale, Judge**
                                           **United States District Court**

cc:    Plaintiff, *pro se*
        Counsel of record
4415.011